UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL #29(1/7) JS-6

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   **The Court GRANTS Defendant's motion for summary judgment.**

Before the Court is a motion for summary judgment filed by Defendant GEICO Casualty Company ("Defendant"). *See generally* Dkt. # 29 ("*Mot.*"). Plaintiff Simone Rachel Stivi ("Plaintiff") opposed, *see generally* Dkt. # 53 ("*Opp.*"), and Defendant replied, *see generally* Dkt. # 57 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing, and reply papers, the Court **GRANTS** Defendant's motion.

I.   Background

This is an insurance case involving Defendant's handling of a claim Plaintiff submitted following an automobile accident. On April 11, 2016, a negligent driver ran a red light and collided with the vehicle Plaintiff was driving. *See Defendant's Separate Statement of Uncontroverted Facts*, Dkt. # 29-2 ("*DSUF*"), ¶¶ 7–8; *Plaintiff's Separate Statement of Disputed Facts and Additional Material Undisputed Facts*, Dkt. # 54 ("*PSDF*"), ¶¶ 7–8; *see also Mot.* 1:8–9; *Opp.* 1:18–20.

At the time, Plaintiff was listed as an additional driver on an automobile insurance policy (the "Policy") issued by Defendant to Plaintiff's parents. *DSUF* ¶ 1; *PSDF* ¶ 1; Dkt. # 29-5, Ex. 101 at P000002. The Policy provides up to $100,000 of underinsured motorist coverage per person. *DSUF* ¶ 1; *PSDF* ¶ 1; Dkt. # 29-5, Ex. 101 at P000002. The Policy covers damages for bodily injury caused by underinsured motorists, and if the claimant and insurer cannot agree as to the amount of coverage, "either party will have the right to demand arbitration." Dkt. # 29-5, Ex. 101 at P000016–17. The underinsured motorist coverage applies only after a claimant submits proof that "the limits of bodily injury liability policies applicable to all insured autos

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

causing the injury have been exhausted by payment of judgments or settlements." *Id.* at P000017. The Policy requires claimants to submit written proof of their claim, "includ[ing] details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable" and to submit to a medical examination if Defendant requires. *Id.* at P000018.

On the day of the accident, Plaintiff saw her primary care physician, Dr. Ali Rafatjoo ("Dr. Rafatjoo"), for her accident-related injuries. *PSDF* ¶ 27; *Defendant's Reply to Plaintiff's Separate Statement*, Dkt. # 57-3 ("*DRPS*"), ¶ 27. Plaintiff first experienced symptoms of tinnitus, including ringing in her ears, on the night of the accident. *PSDF* ¶ 28; *DRPS* ¶ 28. Plaintiff saw Dr. Rafatjoo again on April 16 and disclosed her tinnitus symptoms, and Dr. Rafatjoo advised Plaintiff to see a specialist. *PSDF* ¶¶ 30–31; *DRPS* ¶¶ 30–31. Plaintiff saw pain management specialist Dr. Lawrence Miller ("Dr. Miller") on April 18 and saw otolaryngologists Dr. Stephen Grifka ("Dr. Grifka") and Dr. Sol Marghzar ("Dr. Marghzar") on May 6, each of whom diagnosed Plaintiff with tinnitus and recommended tinnitus-related treatment. *See DSUF* ¶ 12; *PSDF* ¶ 12; *Declaration of Ian J. Heap*, Dkt. # 29-3 ("*Heap Decl.*"), ¶¶ 24–25.

Defendant received notice of Plaintiff's accident on April 12, 2016. *DSUF* ¶ 7; *PSDF* ¶ 7. On February 10, 2017, Plaintiff's attorney sent Defendant a letter indicating that Plaintiff had settled with the at-fault driver's insurer for the driver's $25,000 insurance policy limits and asking Defendant to pay Plaintiff the amount remaining under the Policy's underinsured motorist coverage limit—$75,000. *See* Dkt. # 29-5, Ex. 2 at 007; *Heap Decl.* ¶ 10; *Remote Deposition of Gene Goldsman, Esq.*, Dkt. # 29-5, Ex. 130 ("*Goldsman Depo.*") at 23:21–24. In response, Defendant asked Plaintiff's attorney to provide documents necessary to process Plaintiff's claim, including copies of the at-fault driver's insurance policy declarations page and the settlement. *Heap Decl.* ¶ 11; Dkt. # 29-5, Ex. 108. Defendant also asked for Plaintiff's medical bills and records or that she sign a medical authorization. *Heap Decl.* ¶¶ 11–12; Dkt. # 29-5, Exs. 106, 108. Defendant followed up with Plaintiff's attorney on March 8 and 10, indicating that it was continuing its investigation but had not yet received some of the documents necessary to process the claim, despite numerous requests by letter, e-mail, and telephone. *Heap Decl.* ¶ 13; Dkt. # 29-5, Exs.109–110.

On March 10, Plaintiff demanded arbitration. *DSUF* ¶ 9; *PSDF* ¶ 9; *Heap Decl.* ¶ 14. Plaintiff also provided proof that she had exhausted the at-fault driver's insurance policy limits. *DSUF* ¶ 9; *PSDF* ¶ 9. Defendant acknowledged this demand and again requested Plaintiff's medical records and bills or a signed medical authorization to enable it to evaluate her claim and make an offer. Dkt. # 29-5, Ex. 111; *DSUF* ¶ 10; *PSDF* ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

However, Plaintiff never provided Defendant with her medical records or a signed authorization. *DSUF* ¶ 11; *PSDF* ¶ 11; *Heap Decl.* ¶ 23; *Goldman Depo.* 38:13–15, 42:17–21. In June 2017, Plaintiff sent Defendant an offer to compromise for $75,000 pursuant to California Code of Civil Procedure § 998 ("§ 998 Offer"). Dkt. # 29-5, Ex. 112; *Heap Decl.* ¶ 22. In August 2017, Defendant obtained medical records from Plaintiff's known providers in response to subpoenas related to the arbitration. *DSUF* ¶¶ 11–12; *PSDF* ¶¶ 11–12; *Heap Decl.* ¶¶ 24–25. After receiving Plaintiff's subpoenaed medical records, Defendant declined the § 998 Offer but indicated that it would make a counteroffer. Dkt. # 29-5, Ex. 114; *Heap Decl.* ¶¶ 26–27.

Defendant's arbitration counsel hired otolaryngologist Dr. Hamid Djalilian ("Dr. Djalilian") to conduct an independent medical examination ("IME") of Plaintiff, which took place on May 11, 2018. *DSUF* ¶¶ 14–15; *PSDF* ¶¶ 14–15, 40; *DRPS* ¶ 40; *Heap Decl.* ¶¶ 31, 33. Dr. Djalilian prepared a report of the IME, which states that Plaintiff told Dr. Djalilian that her tinnitus started a few days after the accident. *DSUF* ¶ 15; *PSDF* ¶ 15; Dkt. # 29-5, Ex. 116 ("*IME Report*") at 106, 115; *Heap Decl.* ¶ 33. The report also provides findings of Dr. Djalilian's examination of Plaintiff and a "medical record review" describing Plaintiff's treatment and billing by Dr. Miller, Dr. Marghzar, Dr. Grifka, and Dr. Rafatjoo. *See IME Report* at 107–14. Among other findings, the report indicates that Plaintiff "had no complaints of tinnitus" when she saw Dr. Rafatjoo on the day of the accident, that the tinnitus "would have occurred immediately and would not in any way be delayed" if it were related to the accident, and that Plaintiff's audiological testing "makes tinnitus unlikely." *See id.* at 115; *DSUF* ¶ 15; *PSDF* ¶ 15. The report concludes that "[a]t this point, if [Plaintiff] is suffering from tinnitus, it is not related to the accident in question since it started several days after the accident." *IME Report* at 115; *see also DSUF* ¶ 15; *PSDF* ¶ 15. Plaintiff's attorney sent Defendant's arbitration counsel a letter claiming the report was not credible. *PSDF* ¶ 47; *DRPS* ¶ 47; *Heap Decl.* ¶ 35.

In November 2018, Defendant evaluated Plaintiff's claim at $45,000. *DSUF* ¶ 16; *PSDF* ¶ 16; *Heap Decl.* ¶¶ 36–37. Defendant maintains that this evaluation included the full $13,381 in submitted medical expenses, as well as more than $20,000 for pain and suffering. *DSUF* ¶¶ 17–18. According to Defendant, despite Dr. Djalilian's conclusion that the accident did not cause Plaintiff's tinnitus, the evaluation covered all of Plaintiff's submitted medical expenses "related to tinnitus treatment and tinnitus treatment devices." *Id.* ¶¶ 17, 19. Plaintiff does not dispute that Defendant's evaluation covered her $13,381 in submitted medical expenses or assert that she provided proof of additional incurred or expected expenses related to her tinnitus. *See PSDF* ¶ 17. However, she asserts that "$13,381 could never represent 'full credit' for a tinnitus diagnosis or tinnitus treatment devices" and that "$20,000 for pain and suffering could never be an accurate 'evaluation' for a tinnitus diagnosis or tinnitus treatment devices." *Id.* ¶¶ 17–18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

On November 9, after deducting the $25,000 Plaintiff had already recovered from the at-fault driver, Defendant sent Plaintiff's attorney an offer for $20,000. *DSUF* ¶ 20; *PSDF* ¶ 20; *Heap Decl.* ¶ 37. In response, Plaintiff's attorney demanded that Defendant tender the remaining Policy limits and suggested that Dr. Djalilian "has been thoroughly impeached and discredited in this community," attaching an arbitration award from another case in which the arbitrator criticized Dr. Djalilian's opinion. *PSDF* ¶ 48; *DRPS* ¶ 48; Dkt. # 29-5, Ex. 117; *Heap Decl.* ¶ 38. Defendant replied that, based on the information provided, the claim was not then valued at the Policy limits and invited Plaintiff's attorney to send additional information to Defendant "at any time." Dkt. # 29-5, Ex. 118; *Heap Decl.* ¶ 39. Plaintiff's attorney rejected this offer. *See* Dkt. # 29-5, Ex. 119. Plaintiff's attorney informed Defendant numerous times that Plaintiff's tinnitus had no cure and would persist throughout her lifetime. *PSDF* ¶ 53; *DRPS* ¶ 53.

Following Plaintiff's initial arbitration demand, her attorney submitted a formal demand for arbitration before the American Arbitration Association in December 2018. *See* Dkt. # 29-5, Ex. 120 at 123–24. On April 10, 2019, the parties were notified that the arbitration was scheduled for July 22. *Heap Decl.* ¶ 43.

In December 2018, Defendant received additional medical records and bills from Dr. Marghzar indicating $6,525 in costs for visits and devices related to Plaintiff's tinnitus. *See* Dkt. # 29-5, Ex. 120; *Heap Decl.* ¶ 40. On May 3, 2019, Dr. Djalilian provided a supplemental report with an addendum assessing the additional treatment and billing by Dr. Marghzar and a chiropractor. *See* Dkt. # 29-5, Ex. 123 at 171–72; *Heap Decl.* ¶ 44. The supplemental report reiterated Dr. Djalilian's previous conclusion that if Plaintiff had tinnitus, it was unrelated to the accident. *See* Dkt. # 29-5, Ex. 123 at 172.

Defendant then made Plaintiff an increased offer of $34,700 on May 9, followed by an offer of $40,000 on June 10. *DSUF* ¶¶ 22–23; *PSDF* ¶¶ 22–23; *Heap Decl.* ¶¶ 45–46. Plaintiff did not accept, and the parties proceeded to arbitration. *See DSUF* ¶ 24; *PSDF* ¶¶ 24, 54; *DRPS* ¶ 54; *Heap Decl.* ¶¶ 46–47. On September 3, the arbitrator issued an arbitration award in Plaintiff's favor for $75,000. *DSUF* ¶ 25; *PSDF* ¶ 25. Defendant paid the arbitration award on September 19. *DSUF* ¶ 26; *PSDF* ¶ 26.

On October 28, Plaintiff filed suit in the Superior Court for the County of Orange, asserting causes of action for (1) breach of the implied covenant of good faith and fair dealing ("bad faith"), (2) breach of contract, and (3) promissory fraud/deceit. *See generally* Dkt. # 1-2. Among other relief, Plaintiff seeks compensatory and punitive damages. *See id.* 23:1–22. Defendant removed the action to this Court on April 3, 2020. *See generally* Dkt. # 1. On May

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

22, 2020, following the parties' joint stipulation, the Court dismissed Plaintiff's causes of action for breach of contract and for promissory fraud/deceit. *See* Dkts. # 13, 15. As such, only Plaintiff's bad faith claim remains. Defendant now moves for summary judgment on Plaintiff's bad faith claim or, in the alternative, for partial summary judgment as to Plaintiff's prayer for punitive damages. *See generally Mot.*

    II.    <u>Legal Standard</u>

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party will have the burden of proof at trial, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all reasonable inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The evidence presented by the parties must be capable of being presented at trial in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

    III.    <u>Evidentiary Objections</u>

Defendant asserts various evidentiary objections along with its reply brief. *See generally* Dkt. # 57-2. To the extent that the Court relies on objected-to evidence, it relies only on admissible evidence and, therefore, **OVERRULES** the objections. *See Godinez v. Alta-Dena*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

*Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

   IV.   Discussion

Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing. *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007). "A breach of the implied covenant of good faith and fair dealing involves something beyond the breach of the contractual duty itself, and it has been held that bad faith implies unfair dealing rather than mistaken judgment." *See Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 345 (2001) (internal quotations and citation omitted). "Thus, an insurer's bad judgment or negligence is insufficient to establish bad faith; instead, the insurer must engage in a conscious and deliberate act, which unfairly frustrates the agreed common purposes [between the parties] and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App. 4th 60, 86 (2010) (internal quotation and citation omitted).

In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that the insurer withheld policy benefits, and that the withholding was unreasonable and without proper cause. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990); *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). One of the most important factors in determining the insurer's good faith is the reasonableness of its investigation of the insured's claim. *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 879–80 (2000); *Nieto*, 181 Cal. App. 4th at 86 (recognizing that in determining whether an insurer acted in bad faith, "[t]he ultimate test is whether the insurer's conduct was unreasonable").

Under the so-called genuine dispute rule, "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claims is not liable in bad faith." *Chateau Chamberay*, 90 Cal. App. 4th at 347; *see also Guebara*, 237 F.3d at 992. However, the genuine dispute rule "does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson*, 42 Cal. 4th at 723.

Although the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact for the jury, "it becomes a question of law where the evidence is undisputed and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

only one reasonable inference can be drawn from the evidence." *Chateau Chamberay*, 90 Cal. App. 4th at 346. An insurer is only entitled to summary judgment when there are no triable issues of fact as to the insurer's reasonableness in handling the dispute—i.e., when, even viewing the facts in the light most favorable to the plaintiff, a reasonable jury could not conclude that the insurer acted unreasonably. *See Wilson*, 42 Cal. 4th at 723; *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161–62 (9th Cir. 2002). If the record demonstrates the existence of a genuine dispute about the value of the plaintiff's claim and that the insurer's position "was reached reasonably and in good faith," the insurer is entitled to summary judgment. *Wilson*, 42 Cal. 4th at 724.

Defendant argues that it is entitled to summary judgment because Plaintiff cannot meet her burden of showing that it acted unreasonably and has failed to raise a triable issue as to her bad faith claim. *See Mot.* 10:3–16:2; *Reply* 2:1–9:18. Plaintiff counters that Defendant acted in bad faith by (A) unreasonably delaying the investigation and payment of her claim, (B) failing to properly investigate and denying coverage for her tinnitus injury, (C) relying on a biased expert witness, and (D) forcing arbitration. *See Opp.* 1:8–17. The Court considers and rejects each of Plaintiff's arguments in turn.

        A.      <u>Unreasonable Delay</u>

Plaintiff contends that Defendant unreasonably delayed paying her claim for more than two years after she first demanded payment in February 2017. *Opp.* 6:19–7:1. Defendant counters that there is no evidence that it unreasonably delayed investigating or paying the claim. *Reply* 8:18–9:7. Instead, Defendant argues that any delay was due to Plaintiff's failure to provide the information it needed to process her claim and delay in formally demanding arbitration. *Mot.* 15:25–16:2; *Reply* 9:7–18.

"An insurer that unreasonably delays . . . benefits due under the policy may be held liable in tort for breach of the implied covenant." *Rappaport-Scott v. Interinsurance Exch. of Auto. Club*, 146 Cal. App. 4th 831, 837 (2007); *see also Fraley v. GEICO Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000) ("[D]elayed payment based on inadequate or tardy investigations . . . may breach the implied covenant.") (citation omitted). But "[t]here can be no 'unreasonable delay' until the insurer receives adequate information to process the claim and reach an agreement with the insureds." *Globe Indemnity Co. v. Superior Ct.*, 6 Cal. App. 4th 725, 731 (1992); *see also Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 2d 1154, 1160 (C.D. Cal. 2007) ("[D]elay while the insurer seeks information and investigates the insured's claim" does not constitute bad faith.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

Here, the undisputed facts demonstrate that Plaintiff continually failed to provide the information Defendant requested to evaluate her claim or to demonstrate that her claim's value exceeded Defendant's offers. After Plaintiff's attorney first demanded that Defendant pay Plaintiff the $75,000 remaining under the Policy limits in February 2017, Defendant repeatedly requested copies of documents related to Plaintiff's settlement with the at-fault driver, as well as Plaintiff's medical records and bills or a signed medical authorization, to enable it to process the claim. *See* Dkt. # 29-5, Exs. 2, 106, 108–109, 111; *Heap Decl.* ¶¶ 10–13, 17; *DSUF* ¶ 10; *PSDF* ¶ 10. Although Plaintiff eventually provided proof that she had exhausted the at-fault driver's policy limits, she never provided her medical records or a signed medical authorization. *DSUF* ¶¶ 9, 11; *PSDF* ¶¶ 9, 11; *Goldman Depo.* 38:13–15, 42:17–21. Defendant was eventually able to obtain Plaintiff's medical records through subpoenas in August 2017. *DSUF* ¶ 11; *PSDF* ¶ 11.

Soon after receiving Plaintiff's medical records, Defendant raised concerns about whether Plaintiff's tinnitus was continuing, invited Plaintiff's attorney to provide evidence that Plaintiff had purchased a tinnitus device, and declined Plaintiff's § 998 Offer. *See* Dkt. # 29-5, Exs. 112–114; *Heap Decl.* ¶¶ 26–27. Defendant then hired Dr. Djalilian to conduct an IME that took place in May 2018. *DSUF* ¶¶ 14–15; *PSDF* ¶¶ 14–15, 40; *DRPS* ¶ 40. In November 2018, Defendant evaluated the claim and sent Plaintiff an offer for $20,000. *DSUF* ¶¶ 16, 20; *PSDF* ¶¶ 16, 20. When Plaintiff's attorney rejected this offer, Defendant promptly replied that the information provided to date did not support valuing the claim at the Policy limits, as Plaintiff urged, but again invited Plaintiff to submit additional information to support her claim. *PSDF* ¶ 48; *DRPS* ¶ 48; Dkt. # 29-5, Exs. 117–118. Although Plaintiff's attorney informed Defendant that Plaintiff's tinnitus had no cure, *PSDF* ¶ 53; *DRPS* ¶ 53, the record does not indicate that Plaintiff or her attorney provided information to demonstrate that this increased the value of her claim beyond what Defendant offered. After receiving additional medical records, Defendant made offers of increased value in May and June 2019, which Plaintiff again rejected. *DSUF* ¶¶ 22–24; *PSDF* ¶¶ 22–24; *see* Dkt. # 29-5, Ex. 120.

On these facts, a jury could not reasonably conclude that Defendant's investigation represents unreasonable delay, particularly given Plaintiff's repeated failure to provide the information Defendant requested or otherwise demonstrate that her claim's value exceeded Defendant's offers. *See Globe Indemnity Co.*, 6 Cal. App. 4th at 731–32 (1992) (finding insurer's delay in processing claim reasonable as a matter of law because delay "was caused solely by plaintiffs' failure to provide information" needed to process the claim); *Maynard*, 499 F. Supp. 2d at 1160.

Moreover, the fact that Defendant did not pay Plaintiff's claim until after the arbitration does not demonstrate unreasonable delay. Plaintiff initially demanded arbitration in March

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

2017, but her attorney did not submit a formal demand for arbitration before the American Arbitration Association until December 2018. *See DSUF* ¶ 9; *PSDF* ¶ 9; Dkt. # 29-5, Ex. 120 at 123–24. The parties received notice in April 2019 that arbitration was scheduled for July. *Heap Decl.* ¶ 43. Less than three weeks after the arbitrator issued its award, Defendant paid Plaintiff the $75,000 award. *DSUF* ¶¶ 25–26; *PSDF* ¶¶ 25–26. Plaintiff presents no evidence upon which a jury could conclude that any delay in the arbitration process was attributable to Defendant. Instead, the undisputed evidence shows that Defendant continued to investigate Plaintiff's claim and made numerous offers before the parties proceeded to arbitration, and then promptly paid the arbitration award. *See Fraley*, 81 Cal. App. 4th at 1293 (finding bad faith claim failed as a matter of law because insurer handled claim reasonably and "promptly paid" appraisal award); *Keshish v. Allstate Ins. Co.*, 959 F. Supp. 2d 1226, 1236 (C.D. Cal. 2013) (finding no bad faith where there was a genuine dispute about value of claim and insurer "paid the appraisal award to plaintiffs soon after it was rendered").

Thus, the Court concludes as a matter of law that Defendant did not unreasonably delay investigating or paying Plaintiff's claim. *See Maynard*, 499 F. Supp. 2d at 1160; *Globe Indemnity Co.*, 6 Cal. App. 4th at 731–32; *Fraley*, 81 Cal. App. 4th at 1292.

### B. Investigation and Coverage of Tinnitus

Next, Plaintiff argues that Defendant failed to properly investigate her tinnitus injury and improperly excluded coverage for her tinnitus. *Opp.* 7:1–8:26, 12:9–13:11. Defendant counters that its offers included coverage for her tinnitus and that a genuine dispute existed as to the value of Plaintiff's claim. *Reply* 2:12–8:8.

An insurer must thoroughly investigate and "fully inquire into the bases for the claim." *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1073–74 (2007). An unreasonable failure to investigate occurs when the insurer fails to consider, or seeks to even discover, evidence relevant to the issues of liability and damages. *See Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1624 (1996) ("An insurance company may not ignore evidence which supports coverage."). The existence of a genuine dispute "does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." *Wilson*, 42 Cal. 4th at 723. However, "in evaluating a genuine dispute, it is essential that no hindsight test be applied." *Maynard*, 499 F. Supp. 2d at 1160 (citation omitted). Instead, "[t]he reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in light of subsequent events which may provide evidence of the insurer's errors." *Chateau Chameray*, 90 Cal. App. 4th at 347.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

Plaintiff contends that Defendant unreasonably investigated her claim because it ignored medical evidence of her tinnitus diagnosis and failed to uncover that her tinnitus symptoms started on the night of the accident. *Opp.* 3:22–4:1, 7:10–19, 8:5–7, 11:23–13:4. But Plaintiff points to no medical evidence that Defendant ignored in evaluating her claim. Instead, Dr. Djalilian's report indicates that he reviewed all of Plaintiff's provided medical records. *See IME Report* 108–14. After reviewing these records and conducting his own evaluation of Plaintiff, Dr. Djalilian concluded that the tinnitus was not caused by the accident because Plaintiff did not mention symptoms of tinnitus in her visit with Dr. Rafatjoo on the day of the accident and told Dr. Djalilian that her symptoms "started a few days after" the accident. *See id.* 115. Although it is now undisputed that Plaintiff developed tinnitus symptoms on the night of the accident, *PSDF* ¶ 28; *DRPS* ¶ 28, the fact that Defendant did not immediately discover this does not render its investigation unreasonable—particularly because, as discussed below, Defendant's evaluation included coverage of Plaintiff's tinnitus. On this record, a jury could not reasonably conclude that Defendant failed to consider evidence supporting Plaintiff's claim or otherwise unreasonably failed to investigate her claim. *See Phelps v. Provident Life & Accident Ins. Co.*, 60 F. Supp. 2d 1014, 1022–24 (C.D. Cal. 1999) (rejecting an argument that insurer failed to properly investigate a claim because record showed insurer's expert reviewed plaintiff's doctor's medical reports); *cf. Mariscal*, 42 Cal. App. 4th at 1619–26 (concluding that defendant unreasonably denied coverage after performing a "perfunctory investigation," ignoring evidence supporting claim, and not having its expert review decedent's medical records).

Additionally, the record demonstrates that Defendant's offers included coverage of Plaintiff's tinnitus despite Dr. Djalilian's conclusion that the tinnitus was not caused by the accident. Defendant maintains that its offers included the full $13,381 in submitted medical expenses, including for Plaintiff's tinnitus treatment and devices, and more than $20,000 for pain and suffering. *See DSUF* ¶¶ 16–20, 22–23; *see also Remote Deposition of Ian Heap*, Dkt. # 57-1, Ex. 1 at 90:13–22 (indicating that Defendant included coverage for tinnitus-related medical visits and devices). Plaintiff does not dispute that Defendant's offers included these amounts. *See PSDF* ¶¶ 17–18. However, she claims that "$13,381 could never represent 'full credit' for a tinnitus diagnosis or tinnitus treatment devices" and that "$20,000 for pain and suffering could never be an accurate 'evaluation' for a tinnitus diagnosis." *Id.* Plaintiff therefore argues—without any authority or factual support—that "any offer by [Defendant] less than the available policy limits is, by definition, unreasonable and done in bad faith." *See Opp.* 7:8–9.

Although Plaintiff's medical records indicate that she was diagnosed with "significant tinnitus," for which "there is no cure," *see IME Report* 110, the record contains no evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

available at the time Defendant evaluated her claim that Plaintiff's incurred or expected tinnitus-related costs exceeded the amounts included in Defendant's offers.[1] Moreover, the value of a claimant's pain and suffering is "a matter on which there legitimately may be a wide difference of opinion." *Holenda v. Infinity Select Ins. Co.*, No. CV13–07128R(CWx), 2014 WL 559381, at *4 (C.D. Cal. Feb. 13, 2014) (citation omitted); *see also Capelouto v. Kaiser Found. Hosp.*, 7 Cal. 3d 889, 893 (1972) (noting that pain and suffering "can be translated into monetary loss only with great difficulty"). Even though the arbitrator ultimately awarded Plaintiff $75,000 for her claim, Plaintiff provides no evidence to indicate that Defendant's offer for her pain and suffering was unreasonable, and "insurers cannot be liable for bad faith for offering less for general damages than what an insured demands or eventually recovers." *Holenda*, 2014 WL 559381, at *4. Thus, Plaintiff's claim that Defendant provided "lowball" offers that excluded her tinnitus, *see Opp.* 7:1–9, 8:20–21, is not supported by the record.

Instead, the record demonstrates that Defendant included coverage for Plaintiff's tinnitus but that a genuine dispute existed regarding the value of her claim. Yet, this dispute did not keep Defendant from reasonably investigating and evaluating her claim. *See Wilson*, 42 Cal. 4th at 723–24. Even viewing the facts in the light most favorable to Plaintiff, Defendant's position as to the value of her claim was not unreasonable. *See Maynard*, 499 F. Supp. 2d at 1165 (concluding that insurer "had a reasonable basis upon which to genuinely dispute [p]laintiff's claim and . . . did not act in bad faith as a matter of law"). Defendant was not required to accept Plaintiff's demand for payment of the full Policy limits without evidence that her claim was valued at $75,000. *See Cardiner v. Prov. Life & Accident Ins. Co.*, 158 F. Supp. 2d 1088, 1105 (C.D. Cal. 2001) ("It is not unreasonable for an insurer to resolve good faith doubts about the claim against the claimant. It is well-established that the insurer is entitled to give its own interests consideration in addition to those of its insured."). Accordingly, the Court concludes as a matter of law that Defendant did not unreasonably fail to investigate or include coverage for Plaintiff's tinnitus.

### C. Reliance on Allegedly Biased Expert

Plaintiff argues that Defendant unreasonably relied on the opinion of Dr. Djalilian, whom Plaintiff accuses of being biased. *Opp.* 9:17–14:18. Defendant counters that Plaintiff's

---

[1] Because the reasonableness of Defendant's pre-arbitration offers must be evaluated at the time they were made, *Chateau Chamberay*, 90 Cal. App. 4th at 347, any additional evidence that arose during the arbitration about the expected cost of Plaintiff's tinnitus injuries is irrelevant to Defendant's bad faith.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

accusations—which it disputes—are irrelevant because it did not rely on Dr. Djalilian's opinion to deny any coverage. *Reply* 5:3–6:7; *see also Mot.* 13:22–14:5.

An insurer's reliance on an independent expert to evaluate a claim can establish the existence of a genuine dispute as a matter of law. *See Fraley*, 81 Cal. App. 4th at 1291–92; *Keshish*, 959 F. Supp. 2d at 1236. However, when an insurer relies on an expert's opinion, the "expert's testimony will not automatically insulate an insurer from a bad faith claim based on a biased investigation." *Chateau Chamberay*, 90 Cal. App. 4th at 348 (citing *Guebara*, 237 F.3d at 994–95) (emphasis removed).

Here, Plaintiff accuses Dr. Djalilian of bias on the grounds that he "has a habit of appearing as a [sic] 'expert' on behalf of various insurance companies in the past" and providing similar opinions that the accident in question did not cause the claimant's injuries. *Opp.* 9:18–21. But Plaintiff provides no evidence of the frequency with which Dr. Djalilian has appeared as an expert for insurance companies or the substance of his past opinions. The only example Plaintiff provides of Dr. Djalilian's history as an expert witness is an arbitration award from a prior insurance case involving different parties. Plaintiff's attorney sent a copy of this arbitration award to Defendant in response to the November 2018 offer, accusing Dr. Djalilian of "ha[ving] been thoroughly impeached and discredited in this community" because the arbitrator criticized Dr. Djalilian's opinion in that case. *See PSDF* ¶ 48; *DRPS* ¶ 48; Dkt. # 29-5, Ex. 117; *Heap Decl.* ¶ 38. But even if this critique of Dr. Djalilian's opinion in a separate case could demonstrate that he was biased in conducting his IME of Plaintiff in this case, an arbitrator's award is not admissible to prove the truth of the matters asserted in the award. *See Anderson v. State Farm Mut. Auto. Ins. Co.*, No. 2:06-CV-2843-JAM-KJM, 2008 WL 2441086, at *4 n.4 (E.D. Cal. June 13, 2008) (statements in an arbitrator's award are inadmissible hearsay if offered for their truth). Thus, Plaintiff's claim concerning Dr. Djalilian's bias is not supported by the record.

Plaintiff also accuses Dr. Djalilian of "bas[ing] his 'opinions' on biased or incomplete evidence, therefore ignoring the immense, vital, and quality evidence that Plaintiff had provided [Defendant]." *Opp.* 11:25–12:2. This claim is similarly unsubstantiated by the record. Instead, Dr. Djalilian's report shows that he reviewed Plaintiff's medical records from each of her doctors, in addition to conducting his own evaluation of Plaintiff. *See generally IME Report*. The record does not otherwise support the notion that Dr. Djalilian ignored any evidence Plaintiff submitted.

Even if a reasonable jury could conclude that Dr. Djalilian was biased or not credible, this would not serve to demonstrate Defendant's bad faith because Defendant did not rely on Dr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

Djalilian's opinion to deny or limit coverage. Plaintiff provides no evidence that Defendant excluded coverage for her tinnitus. Because the record shows that Defendant did not rely on Dr. Djalilian's conclusion that Plaintiff's tinnitus was not caused by the accident to deny or limit her claim, Dr. Djalilian's alleged bias cannot demonstrate Defendant's bad faith. *Cf. Duitch v. Travelers Ins. Co.*, CV16–5625 PSG JCx, 2017 WL 3579695, at *7–8 (C.D. Cal. Apr. 1, 2017) (concluding that a jury could find that defendant's expert was not independent and "failed to adequately investigate the true extent of the damage, thus *rendering Defendant's reliance on his opinion* [to deny coverage] *unreasonable*") (emphasis added).

### D.     Arbitration

Finally, Plaintiff argues that Defendant acted unreasonably by "forc[ing] an unnecessary and costly arbitration" and that the fact that the arbitrator awarded Plaintiff $75,000 shows that Defendant's offers were in bad faith. *Opp.* 1:8–17, 11:18–23, 13:13–15, 18:24–27. Defendant contends that it was Plaintiff who demanded arbitration and that the fact that the arbitrator's award exceeded Defendant's offers does not prove that its offers were unreasonable. *Mot.* 11:17–19, 13:5–6; *Reply* 8:3–16, 11:24–27.

The Court agrees with Defendant. It is undisputed that Plaintiff demanded arbitration. *DSUF* ¶ 9; *PSDF* ¶ 9; Dkt. # 29-5, Ex. 120. Plaintiff provides no authority for the proposition that an insurer's participation in arbitration demanded by a claimant constitutes bad faith. Even viewing the facts in the light most favorable to Plaintiff, Defendant did not effectively force arbitration by declining her § 998 Offer because Plaintiff had not provided evidence to demonstrate that her claim was worth the $75,000 she demanded. Additionally, before the parties proceeded to arbitration, Defendant made multiple counter-offers—which Plaintiff rejected—and continued to invite Plaintiff to provide information demonstrating that the value of her claim exceeded Defendant's offers. *See DSUF* ¶¶ 20, 22–24; *PSDF* ¶¶ 20, 22–24; Dkt. # 29-5, Exs. 117–119. The fact that the arbitrator eventually awarded Plaintiff the full $75,000 does not demonstrate that Defendant's evaluation and offers for less than that amount were unreasonable. *See Maynard*, 499 F. Supp. 2d at 1161 n.5 ("[A]n arbitrator's ultimate conclusion on liability is irrelevant to a bad faith claim."); *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F. Supp. 911, 919 (C.D. Cal. 1994) ("The fact that . . . the arbitrator subsequently found that [defendant] owed [plaintiff] the limit of his policy does not imply that [defendant] acted in bad faith in the first instance.").

Thus, on this record, a jury could not reasonably conclude that Defendant unreasonably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-658 PSG (JDEx) | Date | January 4, 2022 |
|---|---|---|---|
| Title | Simone Rachel Stivi v. Geico Indemnity Insurance, et al. | | |

forced Plaintiff to arbitrate her claim or that Defendant acted in bad faith by evaluating Plaintiff's claim at an amount lower than the arbitrator awarded.

### E. Conclusion

The record demonstrates that a genuine dispute existed as to the value of Plaintiff's claim, and Plaintiff has not provided evidence that Defendant acted unreasonably in investigating or evaluating her claim. *See Wilson*, 42 Cal. 4th at 720–24. Accordingly, the Court concludes as a matter of law that Defendant's claims-handling conduct was reasonable. *See Fraley*, 81 Cal. App. 4th at 1291–93. Because Defendant has highlighted the absence of evidence to support Plaintiff's bad faith claim, and Plaintiff has not set forth evidence showing a genuine issue of material fact, Defendant is entitled to summary judgment. *See Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 248; *Cardiner*, 158 F. Supp. 2d at 1105–06 (granting summary judgment for insurer on bad faith claim as record showed an absence of a genuine issue and plaintiff "failed to set forth specific facts showing that there remain[ed] a genuine issue for trial"). The Court therefore **GRANTS** summary judgment in favor of Defendant on the bad faith claim.

Given that Defendant is entitled to summary judgment on Plaintiff's bad faith claim —her sole remaining cause of action—the Court need not reach Defendant's alternative request for partial summary judgment as to Plaintiff's prayer for punitive damages. *See Cardiner*, 158 F. Supp. 2d at 1106 (because court granted summary judgment for insurer on bad faith claim, "the issue of punitive damages [wa]s necessarily moot"); *Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 382 (C.D. Cal. 1995) (same).

### V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment in its entirety. This order closes the case.

**IT IS SO ORDERED.**